ALLEN & *al. vs.* THE PORTLAND STAGE COMPANY.

If an execution be issued within " twenty four hours" after judgment, though it be on the following day, it is irregular under *Stat.* 1821, *ch.* 60, *sec.* 3, and may for that cause be set aside.

Parol evidence may be received to show the hour of the day at which an execution was issued, for the purpose of showing that it was within twenty four hours after judgment, and therefore irregular.

But such irregularity can only be shown by parties or privies; and it cannot affect the title of an innocent purchaser without notice.

Whether this objection can be taken collaterally, or only directly upon a motion to set aside the execution ;—*quære.*

The extent of an execution on real estate cannot be considered as commenced till the appraisers are sworn.

Whether it can be said to be commenced before the land is shown to the appraisers ;—*dubitatur.*

Therefore where an appraiser was chosen by the debtor's attorney, and the debtor died before either of the appraisers was sworn, the extent was for this cause held void.

Parol evidence is admissible to show the time of the debtor's death, for the purpose of avoiding the extent, as it does not contradict any fact stated in the officer's return.

THIS was a writ of entry, in which the demandants claimed title to a parcel of land as devisees under the will of *Elisha Allen.*

In a case stated by the parties it was agreed that the land was formerly the property of *Porter Sands ;* that the testator caused it to be attached *Oct.* 22, 1830, in his suit against *Sands,* in which judgment was entered *April* 26, 1831 ; and that this entry was made as late as five o'clock in the afternoon. In the same evening, by consent of the attorney of *Sands,* the execution was made out, bearing date *April* 27th, and delivered to the creditor's attorney. *Sands* died on the 27th day of *April,* at one o'clock in the afternoon. On the morning of that day, *Sands* being insensible, his attorney, having general discretionary powers to act for him in this matter, notified the officer who had the execution that he had chos-

en *John Low*, Esq. as an appraiser, for the debtor. The other two appraisers were chosen in the forenoon of the same day. In the afternoon Mr. *Low*, being then notified of his appointment, declined acting, on account of the death of *Sands*; but after the funeral he was induced to waive the objection. The appraisers were sworn, and the extent completed *April* 30th; the debtor's attorney having previously notified the officer that his power was terminated by his client's decease, and that he did not wish Mr. *Low* to act as chosen by him. The officer's return was in the usual form, showing that the appraisers were chosen on the 27th, *Low* being chosen by the debtor's attorney, and the oath administered and the extent completed on the thirtieth. The other facts were agreed subject to objections as to their admissibility in evidence.

The tenants claimed under a mortgage made by *Sands* to them *Feb.* 14, 1831, and an entry for condition broken.

*D. Goodenow*, for the demandants. The execution being dated the day after the rendition of judgment, appears regularly issued; first, because the law does not regard fractions of a day; and secondly, because parol evidence is not admissible to show the contrary. The presumptions of law are in its favor; and if an interval of twenty four hours is necessary, the court ought to presume that the judgment was entered as early on the twenty sixth as it could lawfully have been entered, and that the execution was issued at the earliest legal hour on the following day, and previous to the death of *Sands.* If two judgments are entered on the same day neither has the priority, because parol proof is inadmissible. But if the law be otherwise, the debtor here consented to the issuing of the execution, and so the irregularity is cured. *Ruggles v. Ives*, 6 *Mass.* 494; *Bean v. Parker*, 17 *Mass.* 601; *Bott v. Burnell*, 9 *Mass.* 96; 11 *Mass.* 153; *Eastabrook v. Hapgood*, 10 *Mass.* 313. And if not, yet the execution cannot be avoided collaterally; but only upon direct application of parties or privies. *Butler v. Haines*, 3 *N. Hamp.* 21.

As to the extent, the sheriff's return is conclusive evidence of the choice of the appraisers. 6 *Com. Dig.* 242. The attorney's authority was sufficient for this purpose, both as he was attorney of

record, and as he had general discretionary powers. No deed was requisite. *Commonwealth v. Griffith*, 2 *Pick.* 11; *Smith v. Bowditch*, 7 *Pick.* 137. And the appointment thus made was irrevocable. The extent was commenced, and the rights of the creditor were thereby vested, before the death of *Sands*. But if the appointment was not good as made by the debtor, it may be taken as made by the sheriff, as though the debtor were absent or refused to choose. In either case, his death intervening could not prevent the completion of the extent. *Herring v. Polley*, 3 *Mass.* 121; *Grosvenor v. Gould*, 9 *Mass.* 209.

*Dane* and *J. Shepley*, for the tenants, as to fractions of a day, cited *Mostyn v. Fabrigas*, *Cowp.* 16; 5 *Dane's Abr.* 136; 4 *Co.* 70; *Doug.* 58; *Prescott v. Wright*, 6 *Mass.* 20; 9 *Dane's Abr.* 80; 1 *McCord*, 369;—as to the admissibility of parol evidence, *Leland v. Stone*, 10 *Mass.* 461; *McGregor v. Brown*, 5 *Pick.* 170; *Wynne v. Wynne*, 1 *Wils.* 42;—as to the irregularity of the execution, *Briggs v. Wardwell*, 10 *Mass.* 355; *Hildreth v. Thompson*, 16 *Mass.* 91;—and as to the extent, *Cushing v. Hurd*, 4 *Pick.* 253; 5 *Pick.* 170.

WESTON J. delivered the opinion of the Court at the ensuing *June* term in *Penobscot*.

By the statute, directing the issuing, extending, and serving of executions, *Stat.* 1821, *ch.* 60, *sec.* 3, it is provided that the party, obtaining judgment in a civil action, shall be entitled to have his execution thereon, at any time after the expiration of twenty four hours, after judgment rendered. Now as in the course of judicial proceedings, the days only are noted, and not more minute divisions of time, unless other proof is admissible, the direction of the statute would be rendered ineffectual, whenever the execution bears date the day subsequent to the rendition of judgment. A defendant, against whom an execution issues, at an earlier period than the law permits, ought to have some mode of relief. Suppose he moves to set aside an execution, thus irregularly issued, if he is not allowed to prove the fact, he can take nothing by his motion. It would

27

seem therefore that such proof must be admissible, in order to give effect to the law. It does not contradict the record. The execution may bear date the day following the judgment, and yet have been issued within less than twenty four hours after its rendition. But it is said the counsel for the defendant in the action upon which the execution in question issued, waived his right to have it staid for that period. He argued that it might be post dated, and that the counsel for the plaintiff might receive it, on the day judgment was rendered ; and it does not appear that more was intended by his assent. The practice of post dating, may be convenient for counsel, who are desirous of carrying with them their executions, on their return from court ; but it is attended with hazard. If the clerk refused in all cases to let them go from his office, until the twenty four hours had elapsed, such a difficulty, as is now presented, could not arise. The legal presumption being, that every thing is correctly and legally done by official agents, an execution, bearing date the day following the judgment, will be presumed to have issued according to law, and would not be suffered to be impeached against persons, not parties or privies to any irregularity, such as is now under consideration. Purchasers should be secure in their titles, who buy without notice of such irregularity, where every thing appears by the record, to have been legally conducted. Whether this objection can be taken collaterally, or whether only directly, upon motion to set aside the execution, we do not decide, because we are of opinion, that there is a fatal defect in the levy, upon another ground.

The first act to be done by the officer, in extending an execution upon real estate, is, to cause three disinterested freeholders to be sworn as appraisers. The statute points out how they are to be designated, in which the creditor, the debtor and the officer have a part to perform ; but the duty of causing them to be sworn is the first, which is specially and distinctly enjoined upon the officer. We are of opinion, that until this is done, the levy cannot be considered as commenced. Indeed it might not be going too far to hold, that the first step in extending an execution upon any particular real estate is, when it is shown to the appraisers ; for there is no designa-

tion of the land to be appraised, in the oath administered. The authorities, cited by the counsel for the demandants, sufficiently show that the return of the officer, whether true or false, is conclusive as to what is done under the execution; and is the only evidence, which can be received. But it is not evidence of the time of the decease of the judgment debtor. That is a fact which may be proved *in pais*. In the present case it is agreed, that the judgment debtor deceased on the twenty seventh day of *April*, 1831. By the officer's return it appears, that the appraisers were not sworn, until the thirtieth of the same month. It results that the levy upon the land in question, not having been commenced until after the decease of the judgment debtor, was not effectual to transfer the title from him to the judgment creditor. The demandants making claim only as devisees under him, there must be

*Judgment for the tenants.*